# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

PRIORITY AUTO GROUP, INC.,      )
                                )
         Plaintiff,             )
                                )
v.                                  )        Case No.: 2:12-cv-492
                                )
FORD MOTOR COMPANY,       )
                                )
         Defendant.          )

## REPORT AND RECOMMENDATION

Before the Court is the Defendant's, Ford Motor Company ("Ford"), Motion for Partial Judgment on the Pleadings on Counts I through III of the Plaintiff's, Priority Auto Group, Inc. ("Priority"), Complaint filed on October 16, 2012. After being fully briefed, the Motion was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Civil Rule 72. On January 10, 2013, the Court heard oral argument on the Motion from Mr. Brad Darin Weiss, Esq., representing Priority, and Mr. Kurt David Williams, Esq., representing Ford.[1] The Official Court Reporter was Jody Stewart. For the following reasons, the undersigned United States Magistrate Judge **RECOMMENDS** the Motion be **GRANTED** and Counts I through III of the Complaint be **DISMISSED WITH PREJUDICE**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kimnach Ford, Inc. ("Kimnach"), was an authorized Ford dealer in Norfolk, Virginia, for fifty-one years pursuant to a Sales and Service Agreement ("franchise agreement") with Ford, a

---

[1] Mr. Richard Joshua Cromwell, Esq., representing Ford, was also present but did not argue.

motor vehicle manufacturer licensed to do business in Virginia. Under this agreement, if the agreement was terminated or not renewed by either party, Ford "ha[d] the right to approve or decline to approve any prospective purchaser[, *e.g.*, Priority,] as to his character, automotive experience, management, capital and other qualifications for appointment as an authorized dealer," but such approval was not to be unreasonably withheld. ECF No. 14, attach. 2 at 79. Additionally, in the event Kimnach was sold or transferred, which would require Ford to enter into a sales and service agreement with the prospective buyer, *e.g.*, Priority, Ford had the "Right of First Refusal to Purchase the stock or assets on the same terms and conditions offered or agreed to with such persons, regardless of whether the proposed buyer is qualified to be a dealer." *Id.*

On September 14, 2010, Priority entered into an Asset and Real Estate Purchase Agreement ("Priority agreement") with Kimnach and its 100% equity owner, Julian Council ("Council"), to purchase Kimnach's assets and real property with the purpose of operating as an authorized Ford dealer at the same location.[2] The implementation of this agreement, however, was conditioned on Ford's authorization of Priority as a dealer. ECF No. 1, attach. 3 at 20 ("Buyer shall submit promptly to Franchisor a completed dealer application package and thereafter Buyer shall use reasonable efforts to be approved by Franchisor as a dealer of new vehicles manufactured and/or distributed by Franchisors."). Kimnach notified Ford in writing of this agreement on September 16, 2010. Ford, in turn, informed Kimnach in writing on October 19, 2010, that it was exercising its statutory and contractual right of first refusal and assigning this right to Dealership Acquisition Company, LLC ("DAC"),[3] composed of three local Ford

---

[2] Priority has never been authorized to operate as Ford dealer and sell its motor vehicles.
[3] The franchise agreement authorized Ford to assign its right of first refusal "to any third party," *e.g.*, DAC. In the

dealers. That day, Ford also notified Priority in writing that it was exercising this right, thereby rejecting and terminating the Priority agreement. Thereafter, on June 29, 2011, DAC entered into an Asset and Real Estate Purchase Agreement ("DAC agreement") with Kimnach and Council to purchase Kimnach's assets and real property,[4] which resulted in the closing of Kimnach. This suit followed.

## II. ANALYSIS

### A. Standard of Review

Ford moved for partial judgment on the pleadings on Counts I through III of the Complaint pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"), which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). This motion is to be decided under the same standard as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), with the addition that the Court may also consider the answer. *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) ("We will construe the Commonwealth's motion as a motion under Rule 12(c) which is assessed under the same standard that applies to a Rule 12(b)(6) motion.") (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain

---

event of such assignment, Ford "guarantee[d] full payment of the purchase price by the Assignee." ECF No. 14, attach. 2 at 79.

[4] Because the Court holds that Priority cannot challenge Ford's exercise of its right of first refusal by attacking the adequacy of the consideration that Kimnach received, the terms of this and the Priority agreements are not important.

statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations" but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Therefore, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face" rather than merely "conceivable," *id.* at 570. This "plausibility standard" is not equivalent to a probability requirement, but a plaintiff must plead more than a "sheer possibility" that it is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation omitted). Legal conclusions do not enjoy a similar deference. *Iqbal*, 556 U.S. at 678.

As an initial matter, the Court must determine whether it may properly consider two of the documents Ford attaches to its brief in support. *See* ECF No. 14, attachs. 2, 6. "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the [Rule 12(c)] motion is converted into one for summary judgment." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (unpublished *per curiam* decision) (citation omitted).

> [T]he problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason—requiring notice so that the party against whom the motion to dismiss is made may respond—that Rule [12(c)] motions are

ordinarily converted into summary judgment.

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). There are exceptions to this rule, however. "Specifically, a court 'may consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed,' without converting the motion into a motion for summary judgment." *Jeffrey J. Nelson & Assocs., Inc. v. LePore*, No. 4:11cv75, 2012 WL 2673242, at *4 (E.D. Va. July 5, 2012) (citation omitted); *see also Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) ("[A court] may consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic") (citations omitted). Under these circumstances, the "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint, [therefore,] the necessity of translating a Rule [12(c)] motion into one under Rule 56 is largely dissipated." *Cortec Indus., Inc.*, 949 F.2d at 48.

Here, Priority argues Ford's Rule 12(c) Motion should be converted to one for summary judgment and either denied or taken under advisement until after discovery is completed because Ford "relies heavily on matters outside the pleadings," specifically, the franchise and DAC agreements. ECF No. 16 at 7. Although Priority only attaches to the Complaint its agreement with Kimnach, *see* ECF No. 1, attach. 3, Priority also specifically and sufficiently references the franchise agreement in the Complaint and does not dispute its authenticity, *see id.*, attach. 1, ¶¶ 8 ("Seller was a party to a Ford Sales and Service Agreement (the "Dealer Agreement") with Ford for motor vehicles manufactured/distributed by Ford."), 18 ("On October 19, 2010, Ford notified Council and Seller that it or its assignee was purportedly exercising its Right of First Refusal

("ROFR") pursuant to the Dealer Agreement and Virginia Statute assuming the APA"). Accordingly, the Court may properly consider the franchise agreement, which is not attached to the Complaint but is attached to Ford's brief in support, *see* ECF No. 14, attach. 2, without converting Ford's Rule 12(c) Motion to one for summary judgment. *See Witthohn*, 164 F. App'x at 396.

The same may not be said of the DAC agreement, however, which is neither attached to nor sufficiently referenced in the Complaint. Nonetheless, this omission does not effectuate the above conversion because the Court did not consider the contents of this agreement in reaching its recommended disposition. *See id.*; *see also Finley Lines Joint Protective Bd. Unit 200, Bhd. Ry. Carmen v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) ("[T]he proper approach to a Rule [12(c)] conversion is functional rather than mechanical. A motion [for judgment on the pleadings] is not automatically transformed into a motion for summary judgment simply because matters outside the pleadings are filed with ... the district court. If the district court chooses to ignore the supplementary materials and determines the motion under the Rule 12(b)(6) standard, no conversion occurs.") (quoting *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank*, 958 F.2d 15, 18-19 (1st Cir. 1992)) (first alteration in original). Rather, the Court considered only the Complaint and Answer, the Priority and franchise agreements, and the parties' briefs and oral arguments in deciding Ford's Rule 12(c) motion, taking care not to consider the DAC agreement or any argument made in reference to that document.

### B. Standing Under Virginia Code § 46.2-1569(3a)

Priority has sued Ford in Count I of the Complaint for violating Virginia Code § 46.2-1569(3a), which provides, in relevant part:

In the event the manufacturer ... [, *i.e.*, Ford,] takes action to prevent or refuse to approve the sale or transfer of the ownership of a dealership[, *i.e.*, Kimnach,] by ... the transfer, sale or assignment of a dealer franchise, ... without a statement of specific grounds for doing so that is consistent with subdivision 3 hereof or imposes a condition in violation of subdivision 3a hereof, that shall constitute a violation of this section.... If [Kimnach] does not request a hearing by the Commissioner concerning the action or the condition imposed by [Ford], and the action or condition was the proximate cause of the failure of the contract for the sale of transfer of ownership of [Kimnach], *the applicant for approval of the sale or transfer*[, *i.e.*, Priority,] or the existing dealer,[ *i.e.*, Kimnach,] or both, *may commence an action at law for violation of this section....* Notwithstanding the foregoing, an exercise of the right of first refusal by [Ford] pursuant to § 46.2-1569.1 shall not be considered the imposition of a condition prohibited by this section.

VA. CODE ANN. § 46.2-1569(3a) (emphasis added). In light of this provision, Priority argues it has standing to sue Ford because (1) "Ford neither had lawful grounds for rejecting Priority's application[; (2)] nor did it lawfully exercise a[] [right of first refusal]." ECF No. 1, attach. 1, ¶ 35.

As to the first claim, Priority maintains Ford violated § 46.2-1569(3a) by rejecting the sale of Kimnach to Priority and by not providing Kimnach with a statement of specific grounds for doing so, such as "(i) lack[] of good moral character, (ii) lack[] of reasonable motor vehicle dealership management experience and qualifications, (iii) lack[] of financial ability to be the dealer, or (iv) fail[ure] to meet the standards otherwise established ... to be a dealer." VA. CODE ANN. § 46.2-1569(3). In fact, in a November 2, 2010, letter, Ford expressed its "high regard for [Priority] as a dealer candidate" but that, as to the sale of Kimnach, it was exercising its statutory and contractual right of first refusal. ECF No. 1, attach. 3. The first question before the Court, therefore, is whether an applicant for approval of the sale or transfer of the ownership of a dealership ("prospective buyer") has standing under § 46.2-1569(3a), together with § 46.2-1569(3), to sue a manufacturer that exercises its right of first refusal, regardless of the propriety

7

of this exercise, but fails to provide the dealer with a statement of specific grounds for rejecting the sale of the dealership to the prospective buyer.

Concerning the second claim, Priority maintains Ford violated § 46.2-1569(3a) by improperly exercising its right of first refusal because Kimnach did not receive from Ford the same or greater consideration as it would have received from Priority for the sale of the dealership. *See* VA. CODE ANN. § 46.2-1569.1(2) ("Notwithstanding the terms of any franchise agreement, in the event of a proposed sale or transfer of a dealership, the manufacturer or distributor shall be permitted to exercise a right of first refusal to acquire the new vehicle dealer's assets or ownership, if such sale or transfer is conditioned upon the manufacturer's or dealer's entering into a dealer agreement with the proposed new owner or transferee, only if all the following requirements are met: ... 2. The exercise of the right of first refusal will result in the dealer's and dealer's owner's receiving the same or greater consideration as they have contracted to receive in connection with the proposed change of ownership or transfer"). The second question before the Court, therefore, is whether a prospective buyer has standing under § 46.2-1569(3a), together with § 46.2-1569.1, to sue and challenge a manufacturer's exercise of its right of first refusal by attacking the adequacy of the consideration a dealer receives from the manufacturer for the sale of the dealership. Ford answers these questions in the negative. Because the case was removed from the Circuit Court of the City of Norfolk, Virginia, to this Court, which is exercising diversity jurisdiction, the substantive law of Virginia, the state in which the Court sits, controls. 28 U.S.C. §§ 1332, 1441; *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

*i. General Principles of Standing and Private Rights of Action Under Virginia Law*

The Supreme Court of Virginia has held that "[t]he concept of standing concerns itself with the characteristics of the ... entity who files suit." *Cupp v. Bd. of Supervisors of Fairfax County*, 318 S.E.2d 407, 411 (Va. 1984). "In asking whether a[n] [entity] has standing, [the Supreme Court] ask[s], in essence, whether [the entity] has a sufficient interest in the subject matter of the case so that the parties will be actual adversaries and the issues will be fairly and faithfully developed." *Id.* However, a court's inquiry into an entity's standing to sue begins with a discussion of whether the entity "has a substantial legal right" to assert a legal position because, absent this, the entity's rights cannot be affected by the disposition of an action. *Id.* (citation omitted).

In Virginia, settled principles of statutory construction dictate that "where a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise." *Sch. Bd. of City of Norfolk v. Giannoutsos*, 380 S.E.2d 647, 649 (Va. 1989) (citations omitted). Moreover, "[a] private right of action is not automatically created by a penal or regulatory statute." *Black & White Cars, Inc. v. Groome Transp., Inc.*, 442 S.E.2d 391, 394 (Va. 1994). As a further matter, the Supreme Court of Virginia "has long regarded the state legislature as a repository of sovereign powers, whose dispensation must in any context be strictly construed." *A & E Supply Co., Inc. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 674 (4th Cir. 1986) (citing *Commonwealth v. County Rd. of Arlington County*, 232 S.E.2d 30, 37 (Va. 1977) ("[T]he rule is clear that where a power is conferred and the mode of its execution is specified, no other method may be selected; any other means would be contrary to legislative intent and, therefore, unreasonable")). Here, § 46.2-1569(3a) plainly grants Priority, as the prospective buyer, or Kimnach, as the selling dealer, or

9

both, the right to sue Ford, the manufacturer, if Ford "takes action to prevent or refuse to approve the sale or transfer of the ownership of a dealership ... without a statement of specific grounds for doing so that is consistent with [§ 46.2-1569(3)] or imposes a condition in violation of [§ 46.2-1569(3a)]." VA. CODE ANN. § 46.2-1569(3a).

The parties, however, do not cite to and the Court is unable to find a case from this jurisdiction—federal or state—that addresses the extent to which the right to sue under § 46.2-1569(3a) lies in a prospective buyer. Because the Supreme Court of Virginia has not addressed this issue of apparent first impression, it is the obligation of this Court to divine how the Supreme Court will answer. *GAF Corp. v. County Sch. Bd. of Wash. County, Va.*, 629 F.2d 981 (4th Cir. 1980); *Compton v. Nationwide Mut. Ins. Co.*, 480 F. Supp. 1254 (W.D. Va. 1979). The Court begins by considering the persuasive, yet non-binding, authority of the Third Circuit and Pennsylvania's comparable, but not identical, statute.

### ii. Comparable Legislation

The Pennsylvania Board of Vehicles Act broadly granted "*any person* who is or may be injured by a violation of a provision of this Act o[r] any party to a franchise who is so injured in his business or property by a violation of a provision of this Act ... [the right to] bring an action for damages and equitable relief." *Rosado v. Ford Motor Co.*, 337 F.3d 291, 294 (3d Cir. 2003) (quoting 63 PA. CONS. STAT. § 818.29) (emphasis added) (footnote omitted). A manufacturer violated this provision by, for example, "unreasonably withholding consent to the sale of a franchise to a qualified buyer." *Id.* at 293 (citing 63 PA. CONS. STAT. § 818.12(b)(3)). Like Virginia, Pennsylvania grants manufacturers a right of first refusal, and in order to exercise this right in accordance with the statute, the manufacturer must satisfy four requirements, one of

10

which is to give the dealer the same or greater consideration for the sale of the dealership as he would have received from the prospective buyer. *Id.* (quoting 63 PA. CONS. STAT. § 818.16). The preceding provisions are notable here because a federal court was confronted with the issue, as this Court is, of whether a prospective buyer of an automobile dealership has standing to sue and challenge a manufacturer's exercise of its right of first refusal by attacking the adequacy of the consideration a dealer receives from the manufacturer for the sale of the dealership.

In *Rosado v. Ford Motor Co.*, 337 F.3d 291 (3d Cir. 2003), a plaintiff and prospective buyer of a Ford dealership sued Ford under § 818.29 after being deprived of the opportunity to purchase the dealership. The plaintiff claimed Ford improperly exercised its right of first refusal by not giving the dealers the same or greater consideration for the sale of the dealership as they would have received from the plaintiff. However, Ford responded that § 818.16 was enacted for a dealer's benefit, not a prospective buyer's, and, therefore, the plaintiff may not litigate whether Ford properly exercised its right of first refusal. The Third Circuit concurred with Ford, holding:

> In reality, it is not the loss that the [dealers] might have suffered that [the plaintiff] seeks. Rather, he wants to recover the benefits of his bargain. Unfortunately for him, the Act only grants prospective purchasers the right to timely notice and reimbursement of reasonable expenses incurred from negotiating the original sales contract.
> ....
> A prospective purchaser lacks standing to claim that the selling dealer did not receive the same or greater consideration under section 818.16.

*Id.* at 296. Although Ford cites to a litany of cases in its brief to support the argument that a prospective buyer may not challenge a manufacturer's exercise of its right of first refusal, *see* ECF No. 14 at 9-11 (other citations omitted),[5] the Court focuses on *Rosado* because that case,

---

[5] *See, e.g., Fresno Motors, LLC v. Mercedes-Benz USA, LLC*, 852 F. Supp. 2d 1280 (E.D. Cal. 2012); *Hand v. Chrysler Corp.*, 30 F. Supp. 2d 667 (D. Vt. 1998); *Blair v. Gen. Motors Corp.*, 838 F. Supp. 1196 (W.D. Ky. 1993); *Beard Motors, Inc. v. Toyota Motors Distribs., Inc.*, 480 N.E.2d 303 (Mass. 1985); *Roberts v. Gen. Motors Corp.*,

unlike the others, specifically discusses the interplay, which is also at issue here, between a manufacturer's exercise of its right of first refusal, a prospective buyer's challenge to this exercise, and the adequacy of the manufacturer's consideration to the selling dealer for the sale of the dealership.

After undertaking its own research, the Court found only one case, from Delaware, to support Priority's position that it has standing under § 46.2.-1569(3a) to sue and challenge Ford's exercise of its right of first refusal. At issue in *Frank W. Diver, Inc. v. General Motors Corp.*, No. 361, 1998 WL 609724 (Del. Aug. 26, 1998), was the proper construction of a statute, like Pennsylvania's, that broadly grants "*any person* who is or may be injured by a violation of a provision of this chapter ... [the right to] bring an action ... for damages." DEL. CODE ANN. tit. 6, § 4916(a) (emphasis added). A question presented to the Delaware Supreme Court, as in *Rosado* and this case, was whether a prospective buyer of an automobile dealership has standing to sue and challenge a manufacturer's exercise of its right of first refusal. The Supreme Court answered in the affirmative, holding "that, as a 'person who is or may be injured by a violation of a provision' of the Act, [a prospective buyer] has standing to challenge [a manufacturer's] exercise of its right of first refusal." *Frank W. Diver, Inc.*, 1998 WL 609724, at *2 (citation and footnote omitted). However, in so holding, the Court provided scant support and analogized the issue to one presented in an altogether different case and set of circumstances. *Id.* at *2 n.2 (citing *Stuart Kingston, Inc. v. Robinson*, 596 A.2d 1378 (Del. 1991) (finding prospective buyers had standing to sue and challenge an entity's exercise of its right of first refusal concerning *the sale of real estate*)). As non-binding precedent offering a bare legal conclusion, this case has little weight.

---

643 A.2d 956 (N.H. 1994); *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 279 P.3d 487 (Wash. Ct. App. 2012).

Even with the benefit of *Rosado*, the Court is cognizant of the fundamental differences between Virginia and Pennsylvania law; the most significant being that the Third Circuit in *Rosado* narrowly interpreted the statute at issue in that case despite its broad grant of the right to sue. Conversely, Virginia Code § 46.2-1569(3a) narrowly limits the right to sue to the dealer and prospective buyer. Because comparable legislation does not provide a definitive answer and certain direction on the extent to which the right to sue under § 46.2-1569(3a) lies in a prospective buyer, the Court must turn elsewhere for guidance.

### iii. General Principles of Statutory Construction Under Virginia Law

Settled principles of statutory review guide the Court's analysis here.

> When the language of a statute is unambiguous, [the Court is] bound by the plain meaning of that language. Furthermore, [the Court] must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more than one interpretation, [the Court] must apply the interpretation that will carry out the legislative intent behind the statute.

*Conyers v. Martial Arts World of Richmond, Inc.*, 639 S.E.2d 174, 178 (Va. 2007) (citations omitted). "'It is a cardinal rule of construction that statutes dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished.'" *Alston v. Commonwealth*, 652 S.E.2d 456, 462 (Va. 2007) (quoting *Prillaman v. Commonwealth*, 100 S.E.2d 4, 7 (1957)).

> Under the rule of statutory construction of statutes in *pari materia*, statutes are not to be considered as isolated fragments of law.... [T]hey should be so construed as to harmonize the general tenor or purport of the system and make the scheme consistent in all its parts and uniform in its operation, unless a different purpose is shown plainly or with irresistible clearness.

*Id.* (quoting *Prillaman*, 100 S.E.2d at 7). The objects the Virginia General Assembly sought to accomplish by enacting the Motor Vehicle Franchise Act are "the promotion of fair dealing and

the protection of small business." *Am. Motor Sales Corp. v. Div. of Motor Vehicles of Commonwealth of Va.*, 592 F.2d 219, 222 (4th Cir. 1979) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 439 U.S. 96, 102 n.7 (1978)) (internal quotation marks omitted). However, Priority only myopically focuses on Virginia Code §§ 46.2-1569 and 46.2-1569.1 without regard to their harmonization with each other and with the purpose of the Act. Because the Virginia rules of statutory construction require these provisions to be construed in the context of the Act as a whole, the Court begins with § 46.2-1569(3).

Section 46.2-1569(3) makes it unlawful for a manufacturer "to prevent or refuse to approve the sale or transfer of the ownership of a dealership ... unless the franchisor[, *i.e.*, the manufacturer], provides written notice *to the dealer* of its objection and the reasons therefor." VA. CODE ANN. § 46.2-1569(3) (emphasis added). If the manufacturer objects, then the objection must be "reasonable," and

> the only grounds that may be considered reasonable ... are that an individual who is the applicant or is in control of an entity that is an applicant (i) lacks good moral character, (ii) lacks reasonable motor vehicle dealership management experience and qualifications, (iii) lacks financial ability to be the dealer, or (iv) fails to meet the standards otherwise established by this title to be a dealer.

*Id.* In order to determine who may sue for a violation of this provision, the Court looks to § 46.2-1569(3a), which grants the dealer and, more importantly, the prospective buyer, as "the applicant for approval of the sale or transfer," the right to sue the manufacturer for damages "[i]n the event the manufacturer ... takes action to prevent or refuse to approve the sale or transfer of the ownership of a dealership ... *without a statement of specific grounds for doing so that is consistent with subdivision 3.*" *Id.* § 46.2-1569(3a) (emphasis added). The plain meaning reading of § 46.2-1569(3a), together with § 46.2-1569(3), appears to grant a prospective buyer of

an automobile dealership the right to sue a manufacturer that objects to the sale or transfer of the dealership but fails to give the dealer one of four statements of specific grounds for the rejection. Notwithstanding, § 46.2-1569.1 grants the manufacturer, "in the event of a proposed sale or transfer of a dealership, ... a right of first refusal to acquire the new vehicle dealer's assets or ownership." *Id.* § 46.2-1569.1.

It is the obligation of this Court, however, to consider §§ 46.2-1569(3), (3a), and 46.2-1569.1, not as isolated fragments, but rather as cohesive provisions that interact with each other to achieve a harmonized effect and realize the purpose of the Motor Vehicle Franchise Act. In light of this principle, the Court finds that § 46.2-1569(3a) does not grant a prospective buyer of an automobile dealership the right to sue a manufacturer that rejects the prospective buyer but also fails to give the dealer one of four statements of specific grounds for the rejection *if* the manufacturer exercises its right of first refusal under § 46.2-1569.1. A different result is improvident because not only is the statement of specific grounds a privilege that is given to the dealer, not the prospective buyer, *see id.* § 46.2-1569(3) ("unless the franchisor provides written notice *to the dealer* of its objection and the reasons therefor") (emphasis added), more importantly, it would be counterintuitive and redundant to require the manufacturer to give such a statement when exercising this right because the sole reason for rejecting the sale or transfer of the dealership to the prospective buyer is this exercise under § 46.2-1569.1. To hold otherwise would mean that a manufacturer's right of first refusal could only be exercised if the manufacturer could demonstrate one of four "approved" grounds for rejecting the prospective buyer. By its express terms, § 46.2-1569.1 contains no such constraint. In so holding, the Court is not interpreting away what private right of action the Virginia General Assembly has granted

15

to a prospective buyer under § 46.2-1569(3a); instead, the Court's construction balances this right with the Motor Vehicle Franchise Act as a whole and a manufacturer's right of first refusal in particular.

Next, § 46.2-1569(3a) makes it unlawful for a manufacturer "[t]o impose a condition on the approval of the sale or transfer of the ownership of a dealership ... if the condition would violate the provisions of this title if imposed *on the existing dealer*." *Id.* § 46.2-1569(3a) (emphasis added). In order to determine who may sue for a violation of this provision, the Court looks to the provision's second paragraph, which grants the dealer and, more importantly, the prospective buyer the right to sue the manufacturer for damages "[i]n the event the manufacturer ... imposes a condition in violation of subdivision 3a hereof." *Id.* Except, "an exercise of the right of first refusal by the manufacturer ... pursuant to § 46.2-1569.1 *shall not* be considered the imposition of a condition prohibited by this section." *Id.* (emphasis added). The plain meaning reading of these provisions appears to grant a prospective buyer of an automobile dealership the right to sue a manufacturer that, in objecting to the sale or transfer of the dealership, imposes a condition in violation of Title 46.2 of the Virginia Code. This right, however, is balanced with and may not be asserted after a manufacturer exercises its right of first refusal under § 46.2-1569.1. The question, therefore, is whether a prospective buyer may sue and challenge a manufacturer's exercise of this right by attacking the adequacy of the consideration a dealer receives from the manufacturer for the sale of the dealership. The Court answers this question in the negative.

Section 46.2-1569.1 reads:

Notwithstanding the terms of any franchise agreement, in the event of a proposed sale or transfer of a dealership, the manufacturer ... *shall be permitted* to exercise

a right of first refusal to acquire the new dealer's assets or ownership, if such sale or transfer is conditioned upon the manufacturer's or dealer's entering into a dealer agreement with the proposed new owner or transferee, only if all the following requirements are met: ... 2. The exercise of the right of first refusal will result in the dealer's and dealer's owner's receiving the same or greater consideration as they have contracted to receive in connection with the proposed change of ownership or transfer.

*Id.* § 46.2-1569.1 (emphasis added). Additionally, in exercising its right of first refusal, the manufacturer must "pay the reasonable expenses, including attorney's fees ... incurred by the proposed new owner and transferee ... in negotiating and implementing the contract for the proposed sale or transfer of the dealership or dealership assets."[6] *Id.* § 46.2-1569.1(4).

Here, Kimnach, as the selling dealer, has not challenged Ford's exercise of its right of first refusal; rather, the challenge originates from Priority, as the prospective buyer, that was deprived of the opportunity to purchase Kimnach and operate a Ford dealership after an apparently acceptable agreement had been negotiated between the parties. Even if the Court assumes Kimnach received less consideration from Ford for the sale of the dealership than it would have received from Priority, § 46.2-1569.1 was largely crafted for the benefit of the manufacturer, the dealership, and its owner, not the prospective buyer.

The Virginia General Assembly statutorily granted the right of first refusal to the manufacturer, and in order to properly exercise this right under § 46.2-1569.1, the manufacturer must meet four requirements. One requirement in particular obligates the manufacturer to match or exceed the terms of the original proposal, which protects dealers by creating two prospective buyers for every offer they receive. *Id.* § 46.2-1569.1(2). Another requirement obligates the manufacturer to notify the dealer, notably not the prospective buyer, if it intends to exercise its

---

[6] Although Priority alleges in Count IV of the Complaint that Ford violated Virginia Code § 46.2-1569.1(4), Ford has not challenged Priority's standing to sue on this issue.

right of first refusal. *Id.* § 46.2-1569.1(1). However, § 46.2-1569.1 does require the manufacturer to reimburse the prospective buyer with reasonable expenses incurred from negotiating the original proposal with the selling dealer. *Id.* § 46.2-1569.1(4). This provision is the only one in § 46.2-1569.1 that specifically refers to prospective buyers and grants them some form of relief, but Ford has not challenged Priority's standing to sue under this provision. Because § 46.2-1569.1 grants the prospective buyer a specific benefit arising from the manufacturer's exercise of its right of first refusal, there can be no suggestion that the other provisions in that section, which are silent as to the prospective buyer, make a similar grant of benefits to the prospective buyer.

The Court notes that the Complaint is partly grounded on the argument that Kimnach did not receive adequate consideration from Ford for the sale of the dealership pursuant to § 46.2-1569.1(2) when Ford exercised its right of first refusal. Setting aside the question of why the Virginia General Assembly would grant the prospective buyer the right to sue a manufacturer for allegedly depriving the dealer of the consideration to which it is entitled, the fact remains that Priority is not seeking redress for the consideration Kimnach allegedly did not receive. Instead, Priority wants to recover the benefits of its bargain. Section 46.2-1569.1, however, only grants Priority the right to reimbursement of reasonable expenses incurred from negotiating the original proposal with the selling dealer.

For these reasons, the Court finds that a prospective buyer may not challenge a manufacturer's exercise of its right of first refusal under § 46.2-1569.1 by attacking the adequacy of the consideration a selling dealer receives from the manufacturer for the sale of an automobile dealership. In light of this holding, the Court further finds that a prospective buyer may not sue a

manufacturer under § 46.2-1569(3a) and allege as a basis that the manufacturer imposed a condition in violation of the section by improperly exercising its right of first refusal. This construction balances a prospective buyer's right to sue a manufacturer for imposing a prohibited condition, whatever that may be, with the plain exception that "an exercise of the right of first refusal by the manufacturer ... pursuant to § 46.2-1569.1 *shall not* be considered the imposition of a [prohibited] condition." *Id.* § 46.2-1569(3a) (emphasis added).

Accordingly, the Court holds, and predicts the Supreme Court of Virginia will agree, that Priority does not have standing under Virginia Code § 46.2-1569(3a) to sue Ford based on the facts alleged here.

### C. Standing to Sue for Tortious Interference with a Contract and Business Expectancy

Priority alleges in Counts II and III of the Complaint that Ford tortiously interfered with a contract and business expectancy regarding the sale of Kimnach. Ford objects, arguing these Counts fail as a matter of law because the implementation of the Priority agreement was conditioned on Ford's authorization of Priority as a dealer, and Priority cannot allege Ford tortiously interfered with Priority's desired contractual and business relationship *with Ford*.

Under Virginia law, in order to establish a *prima facie* claim for tortious interference with a contract, Priority must show that (1) it had a valid contractual relationship; (2) Ford knew of the relationship; (3) Ford *intentionally interfered* inducing or causing a breach or termination of the relationship; and (4) Priority suffered a loss as a result of Ford's disruption of the relationship. *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 493 S.E.2d 375, 378 (Va. 1997). The elements for tortious interference with a business expectancy are more-or-less the same, except Priority must demonstrate in addition to the first element "a probability of future

19

economic benefit" and in lieu of the third element "a reasonable certainty that absent [Ford's] *intentional misconduct*, [Priority] would have ... realized the expectancy." *Commercial Bus. Sys., Inc. v. Halifax Corp.*, 484 S.E.2d 892, 896 (Va. 1997) (citation omitted) (emphasis added).

Here, Priority adequately alleges the first, second, and fourth elements of a claim for tortious interference with a contract and business expectancy. Priority identifies an asset and real estate purchase agreement reached with Kimnach on September 14, 2010, in which it agreed to purchase Kimnach's assets and real property with the purpose of operating as an authorized Ford dealer at the same location. Ford's knowledge of this agreement was established by the September 16, 2010, letter in which Kimnach notified Ford of its agreement with Priority and requested Ford issue a dealer application to Priority. With that knowledge, Ford exercised its contractual and statutory right of first refusal, assigned this right to DAC, and informed Kimnach and Priority of this exercise and assignment in an October 19, 2010, letter. As a result, Priority lost the value of its bargain—the operation of a Ford dealership—due to Ford's actions. The remaining question, therefore, is whether Ford can tortiously interfere with a contract and business expectancy if it was required to approve Priority as a dealer but, instead, exercised its right of first refusal. In answering this question, the parties focused their attention at oral argument on two, apparently contradictory, cases from this District: *Rescue Phone, Inc. v. Enforcement Technology Group, Inc.*, No. 2:07cv58, 2007 WL 2045514 (E.D. Va. July 9, 2007) (Judge Morgan's opinion from this Division), and *McDonald's Corp. v. Turner-James*, No. 05-804, 2005 U.S. Dist. LEXIS 42755 (E.D. Va. Nov. 29, 2005) (Judge Lee's opinion from the Alexandria Division).

In *Rescue Phone*, the plaintiff sued for a declaratory judgment that it did not infringe the

defendants' patent and that all claims of the patent were invalid. The plaintiff also alleged

tortious interference with contract relations arising from the defendants' statements that they

would pursue infringement claims against buyers that contracted with the plaintiff and that the

plaintiff did not have the right to sell its products in violation of the defendants' patent. The

defendants moved to dismiss this count for failure to state a claim and argued that tortious

interference claims can lie only against a party that is a stranger to the relationship. They cited to

Judge Lee's opinion in *McDonald's Corp.* and the Fourth Circuit's opinion in *Childers Oil Co.,*

*Inc. v. Exxon Corp.*, 960 F.2d 1265 (4th Cir. 1992), as support.

Rejecting this argument, Judge Morgan held that *McDonald's Corp.* "applie[d] the

statement of law in *Childers Oil* broadly to a case involving Virginia law" when "the opinion in

*Childers Oil* construe[d] a tortious interference claim based on the law of West Virginia, citing

an opinion from the Supreme Court of Appeals of West Virginia." *Rescue Phone, Inc.*, 2007 WL

2045514, at *6 (citations omitted). "[A]ware of no other similar precedent infusing the Virginia

law of tortious interference with West Virginia requirements," Judge Morgan found that Virginia

law allows for a tortious interference claim "against 'a competitor seeking an advantage,' but not

against 'a party to the relationship acting in its own economic interests to limit liability.'" *Id.*

(citations omitted).

In *McDonald's Corp.*, whose facts are more closely aligned than *Rescue Phone*'s facts to

the instant case, the plaintiffs, franchisors, sued the defendants, franchisees, after they entered

into two franchise agreements and operator's leases for the operation of restaurant franchises,

one of which was assigned to another entity. The plaintiffs alleged the defendants exhibited a

"longstanding pattern of payment failures, delays, and delinquencies under the Franchise

Agreements" for both restaurants. *McDonald's Corp.*, 2005 U.S. Dist. LEXIS 42755, at *2 (citation omitted). As a result, the plaintiffs terminated the franchise agreements and demanded the defendants turn over possession of both restaurants and cease using their trademarks. The defendants did not comply, and a suit followed. The defendants counterclaimed with tortious interference with prospective business relationships or contractual relations, to which the plaintiffs moved to dismiss for failure to state a claim.

Agreeing with the plaintiffs, Judge Lee held, *inter alia*, that the "[p]laintiffs [as franchisors] would not be strangers to any alleged business relationship between Defendants [because they must consent to the franchise agreement], and thus could not have tortiously interfered in it." *Id.* at *10. For support, Judge Lee cited to *Childers Oil*, where the owner of a gas station franchise had engaged a specific buyer but the proposed deal fell apart when the franchisor refused to increase its delivery of fuel to the station, a requirement for the would-be buyer. In that case, whose facts are similar to the instant case, the Fourth Circuit found the franchisor's action did not constitute tortious interference.

In reviewing *Rescue Phone* and *McDonald's Corp.*, the Court is cognizant that *McDonald's Corp.* liberally applied a statement of law in *Childers Oil*, a case involving a tortious interference claim under West Virginia law, to a case involving the same claim under Virginia law. The Court, however, will not discount *McDonald's Corp.* merely because of this fact, especially given that it appears to be the only case from this jurisdiction—federal or state— that provides guidance on the question presented in the instant case: whether a franchisor is a stranger to a contract and may be sued for tortious interference if the franchisor's consent to a contract between the franchisee and prospective buyer is required for its implementation but,

22

instead, the franchisor exercises its right of first refusal. Nor will the Court reject *Rescue Phone*, which did not explicitly answer the preceding question in the negative; rather, Judge Morgan held that Virginia law allows for a tortious interference claim against a competitor seeking an advantage. The applicability of *Rescue Phone* is limited, however, because it not only involves facts that differ substantially from the facts in *McDonald's Corp.* and the instant case, it also stands for a statement of law that Priority cannot assert here, namely, that Ford was a competitor seeking an advantage and, therefore, may be sued for tortious interference.

Despite *McDonald's Corp.*'s application of a West Virginia statement of law to a Virginia case, this is consistent with the Supreme Court of Virginia's approach to look to the jurisprudence of other states where there are no Virginia cases that address a particular issue. *See, e.g., Lynnhaven Dunes Condominium Ass'n v. City of Va. Beach*, 733 S.E.2d 911, 916 (Va. 2012) (applying the logic of the Massachusetts Supreme Judicial Court to a question of apparent first impression in Virginia). Here, the elements of tortious interference under West Virginia law are remarkably and substantially similar to the elements for the same claim in Virginia. *Compare Hatfield v. Health Mgmt. Assocs. of W. Va.*, 672 S.E.2d 395, 403 (W. Va. 2008) ("To establish *prima facie* proof of tortious interference, a plaintiff must show: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages.") (citation and emphasis omitted), *with Maximus, Inc.*, 493 S.E.2d at 378 ("Thus, to establish a *prima facie* cause of action in this case, [the plaintiff] was required to show that: (1) it had a contract expectancy; (2) [the defendant] knew of the expectancy; (3) [the defendant] intentionally interfered with the expectancy; ... and ([4]) [the plaintiff] suffered a loss

as a result of [the defendant's] disruption of the contract expectancy."). The one notable difference between these two approaches is that West Virginia explicitly limits tortious interference claims to intentional interference by *a party outside a contractual or business relationship or expectancy* whereas Virginia imposes no such limitation. The Supreme Court of Appeals of West Virginia imposed this limitation on tortious interference claims for good reason:

> It is impossible for one party to a contract to maintain against the other party to the contract a claim for tortious interference with the parties' own contract. Neither party is a stranger to the contract. Each party has agreed to be bound by the terms of the contract itself, and may not thereafter use a tort action to punish the other party for actions that are within its rights under the contract.

*Shrewsbery v. Nat'l Grange Mut. Ins. Co.*, 395 S.E.2d 745, 747 (W. Va. 1990). Because the applicable substantive law of Virginia provides no guidance on the answer to the question presented in the instant case, the Court considers the common law rule as expressed in the relevant Restatement. *See Black v. Powers*, 628 S.E.2d 546, 557 (Va. Ct. App. 2006) ("Accordingly, to determine the applicable substantive law, we must first look to decisional case law from the courts of the [relevant jurisdiction]. If the case law … fails to provide guidance …, we must next consider the common law rule as expressed in the applicable Restatement. Finally, if the Restatement does not provide a clear statement of the governing rule of law, we must ascertain and apply the common law as 'generally understood and applied in the United States.'") (citations omitted).

Section 769 of the Restatement (Second) of Torts states that

> [o]ne who, having a financial interest in the business of a third person intentionally causes that person not to enter a prospective contractual relation with another, does not interfere improperly with the other's relation if he (a) does not employ wrongful means and (b) acts to protect his interest from being prejudiced by the relation.

24

RESTATEMENT (SECOND) OF TORTS § 769 (1979). First, the only argument Priority asserts that Ford employed wrongful means in rejecting the sale of Kimnach to Priority is Ford's alleged improper exercise of its right of first refusal. *See* ECF No. 1, attach. 1, ¶¶ 39 ("Ford willfully and intentionally sought to interfere with the APA and the contractual relationship between Priority, Seller and Council by unlawfully refusing to approve the sale or transfer of ownership based solely on the exercise of an unlawful ROFR in direct violation of" Virginia law), 47 (same). In light of its earlier holding, *see supra*, Part II(B)(iii), and Ford's exercise of its statutory and contractual right of first refusal, the Court holds, and predicts the Supreme Court of Virginia will agree, that this exercise does not constitute an improper action under Virginia's tort of intentional interference. *See Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*, 732 S.E.2d 676, 688 (Va. 2012) ("Improper methods or means generally involve violence, threats, intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, breach of a fiduciary relationship, violation of an established standard of a trade or profession, unethical conduct, sharp dealing, overreaching, or unfair competition.") (citation omitted). Hence, Ford's exercise of its right of first refusal simply does not constitute "wrongful means" contemplated by the Restatement. Second, the grounds upon which Ford exercised this right were related to its financial interest in the ownership and operation of *its franchises*. And although Ford necessarily interfered with the purchase agreement between Priority and Kimnach by exercising this right, this action alone is insufficient under Section 769 of the Restatement (Second) of Torts to subject Ford to potential liability for interfering with a contract and business expectancy. To hold otherwise would subject a manufacturer to liability for exercising a statutory and

25

contractual right.

For these reasons, the Court holds, and predicts the Supreme Court of Virginia will agree, that Priority's claims for tortious interference with a contract and business expectancy as alleged in Counts II and III of the Complaint fail as a matter of law.[7]

## III. RECOMMENDATION

Accordingly, the undersigned United States Magistrate Judge **RECOMMENDS** Ford's Motion for Partial Judgment on the Pleadings, ECF No. 13, be **GRANTED** and Counts I through III of the Complaint be **DISMISSED WITH PREJUDICE.**

## IV. DISPOSITION OF OUTSTANDING MOTIONS

Also before the Court are Priority's Motion for Leave to Amend the *Ad Damnum* Clause, ECF No. 27, which Ford objects to, and Ford's Motion for Leave to Exceed Page Limitations, ECF No. 32, to which Priority has not objected. The time to file additional briefs has lapsed, and, therefore, these Motions are ripe for disposition.

As to the second Motion, Ford requests leave of Court to exceed the thirty-page

---

[7] In its brief in opposition, Priority cites to *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358 (3d Cir. 1992), and *Bowser Cadillac, LLC v. General Motors Corp.*, No. 07-1149, 2008 WL 189557 (W.D. Pa. Jan. 18, 2008); two cases from Pennsylvania to support Priority's position that it may sue Ford for tortious interference with a contract and business expectancy and allege, as a basis, that Ford employed wrongful means in rejecting the sale of Kimnach by improperly exercising its right of first refusal. Having reviewed these cases, the Court finds the Third Circuit's opinion in *Rosado* to be more persuasive. Specifically, in *Rosado*, a prospective buyer sued the defendant, a manufacturer, for tortious interference, claiming, like Priority, that the defendant improperly exercised its right of first refusal by paying the selling dealers less consideration for the sale of the dealership than they would have received from the prospective buyer. The Third Circuit held:

> Here, the tortious interference claim obviously depends on whether the defendant acted in violation of the Vehicles Act. *Crivelli* denied a similar claim, finding that Pennsylvania law would not allow a recovery in such circumstances. We need not repeat *Crivelli*'s thorough analysis of the tortious interference issue. It clearly applies here and mandates denial of recovery.

*Rosado*, 337 F.3d at 296. Additionally, *Rosado* rejected the applicability of *Big Apple*, a case Priority cites to in its brief, because its "holding on standing in the unreasonably withholding context [did] not logically carry over to the first refusal setting. The holding in that case on standing must be read in light of the fact that the claim was limited to a contention that consent was unreasonably withheld." *Id.* at 295.

limitation for its brief in support of its motion for summary judgment by three pages to include a cover page and table of contents. Local Civil Rule 7(F)(3) limits all briefs to thirty pages or less, double-spaced, except for good cause. For good cause shown, and with no objection from Priority, the Court **GRANTS** Ford's Motion, ECF No. 32.

Concerning the first Motion, Priority requests leave of Court to file an Amended Complaint to increase the *ad damnum* clause for Counts I through III from fifteen to thirty-one million dollars, representing profits Priority would have earned in operating a Ford dealership. Despite the general rule liberally allowing amendments, a court may deny leave to amend if "the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (*en banc*) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). Because it is recommended that the Chief District Judge dismiss with prejudice Counts I through III of the Complaint, the Court finds that Priority's proposed amendment would be futile and, therefore, **DENIES** Priority's Motion, ECF No. 27.

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. The Chief United States District Judge shall make a *de novo* determination of those

portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
April *1*, 2013

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Brad Darin Weiss
Charapp & Weiss LLP
8180 Greensboro Drive, Suite 1000
McLean, Virginia 22102
Counsel for the Plaintiff

J. Tracy Walker, IV
McGuireWoods LLP
901 East Cary Street
Richmond, Virginia 23219
Counsel for the Defendant

Kurt David Williams
Berkowitz Oliver Williams Shaw & Eisenbrandt LLP
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Counsel for the Defendant

Fernando Galindo
Clerk of the Court

By:

Deputy Clerk
April ___, 2013